# PATRICK J. CERILLO, LLC

## ATTORNEY AT LAW

PATRICK J. CERILLO*, Esq.
JOHN P. CIONE, Esq.** Of Counsel
** Licensed in New York

Alla S. Fromm, Litigation Paralegal
afrommlaw@comcast.net
Christie P. Fay, Real Estate Paralegal
pjcrealestate@comcast.net
*Qualified Family Mediator per R. 1:40

4 WALTER FORAN BLVD.
SUITE 402
FLEMINGTON, NJ 08822

VOICE: (908) 284-0997
FAX: (908) 284-0915

EMAIL: pjcerillolaw@comcast.net

BASKING RIDGE OFFICE
88 SOUTH FINLEY AVENUE
BASKING RIDGE, NJ 07920

**REPLY TO:**
FLEMINGTON OFFICE

June 4, 2012

***Delivered Via General Messenger Service, Inc.***
Attn: William T. Walsh, Clerk of Court
Mitchell H. Cohen Building & US Courthouse
4th & Cooper Streets
Room 1050
Camden, New Jersey 08101

Re:   Malibu Media, LLC v. John Does 1-9
      Case No: 1:12-cv-03030-JHR-AMD

Dear Mr. Walsh:

With regard to the above-referenced matter, enclosed please find:
 (X)   Plaintiff's Memorandum in Opposition to John Joe 4's Motion to Quash the Subpoena
 (X)   A copy of the plaintiff's Memorandum in a PDF format (on CD)
 (X)   self-addressed stamped envelope
Will you please:
   (XX) File same    (XX) Kindly return "FILED" copies to my office

Very truly yours,

Patrick J. Cerillo, Esquire

PJC/af
Cc:  the Honorable Joseph H. Rodriguez (by regular mail)
     The Honorable Ann Marie Donio (by fax 856 757-5296)
     John J. Jacko, III, Esquire (by e-mail)

*Patrick J. Cerillo*
*Patrick J. Cerillo, LLC*
*4 Walter Foran Blvd.*
*Suite 402*
*Flemington, NJ 08822*
*Attorney for Plaintiff*
*(908) 284-0997*
*Fax: (908) 284-0915*

UNITED STATES DISTRICT COURT
OF NEW JERSEY

| | |
|---|---|
| MALIBU MEDIA, LLC.,<br><br>                     Plaintiff,<br><br>v.<br><br>JOHN DOES 1-9,<br><br>                     Defendants. | Case No. 1:12-cv-03030-JHR-AMD |

**MEMORANDUM IN OPPOSITION TO**
**JOHN DOE 4'S MOTION TO QUASH THE SUBPOENA**

1

# **TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Introduction and Facts | 5-6 |
| II. | Attorney's Fees Are Not Warranted | 6-8 |
| III. | Defendant Does Not Have Standing to Quash the Subpoena | 8-9 |
| IV. | Plaintiff Has a Proper Purpose | 9-11 |
| V. | Plaintiff Has Good Cause to Issue the Subpoena | 11-12 |
| VI. | The Information Plaintiff Requests Is Relevant | 12-14 |
| |    A. The Doe Defendant's IP Addresses Were Undoubtedly Used to Distribute Plaintiff's Copyrighted Movie | |
| VII. | Conclusion | 16 |

# **TABLE OF AUTHORITIES**

Arista Records, LLC. v. Doe 3, 604 F.3d 110 (2d Cir. 2010 ...................................................... 9
Ashcroft v. Iqbal, 129 S.Ct. 1337 (2009) ..................................................................................... 9
Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ................................................................ 9
Charter Communications, Inc., Subpoena Enforcement Matter, 393 F.3d 771, FN3 (8th Cir. 2005) ............................................................................................................................................. 9
City of St. Petersburg v. Total Containment, Inc., MISC. 07-191, 2008 WL 1995298 (E.D. Pa. May 5, 2008) ................................................................................................................................. 7
Hallamore Corp. v. Capco Steel Corp., 259 F.R.D. 76, 79 (D. Del. 2009) ................................ 7
Hay Group, Inc. v. E.B.S. Acquisition Corp., 360 F.3d 404, 412 (3d Cir. 2004) .................. 5, 7
Malibu Media v. John Does 1-9, 12-cv-00669-SDM-AEP (M.D. Fla. March 28, 2012) ........ 4
Malibu Media v. John Does 1-9, 8:12-cv00669-SDM-AEP (M.D. Fla. April 16, 2012) ........ 11
Managed Care Solutions, Inc. v. Essent Healthcare, Inc., 09-60351-CIV, 2010 WL 3419420, at *2 (S.D. Fla. Aug. 27, 2010) .................................................................................................... 4, 6
Morris v. Sequa Corp., 275 F.R.D. 562 (N.D. Ala. 2011) .......................................................... 4
Patrick Collins, Inc. v.Does 1-43, 11-CV-4203-FSH (D. NJ. Jan. 6, 2012) ......................... 8, 11
Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067 at *8 (E.D. Pa. Mar. 26, 2012) .................................................................................................................................. 8, 12. 14
SAJ Distributors, Inc. v. Sandoz, Inc., CIV.A.08-1866(JAP), 2008 WL 2668953 (D.N.J. June 27, 2008) ............................................................................................................................................. 5
Sony v. Tennenbaum, 2011 WL 4133920 at *11 (1st Cir. 2011) ............................................. 10
VPR Internationale v. Does 1-1017, 2:11-cv-02068, (C. Ill. March 8, 2011) ......................... 12
W. Coast Productions, Inc. v. Does 1-5829, 275 F.R.D. 9, 16 (D.D.C. 2011) .......................... 7

I.   **INTRODUCTION AND FACTS**

Plaintiff respectfully requests the Court deny the subject motion. Plaintiff filed a complaint against Defendant on March 28, 2012 in the Middle District of Florida. See Malibu Media v. John Does 1-9, 12-cv-00669-SDM-AEP (M.D. Fla. March 28, 2012). See also Def's Mot. Ex. A. Plaintiff is suing Defendant for using the Internet and the BitTorrent protocol to commit direct and contributory copyright infringement. Defendant resides in Naples, FL. Plaintiff only knows Defendant by his or her IP Address. In order to obtain Defendant's identity so that Plaintiff can properly continue its lawsuit, Plaintiff filed a Motion for Leave in the Middle District of Florida requesting the Court grant it leave to issue a subpoena to Defendant's Internet Service Provider.

On April 16, 2012 the Middle District of Florida granted Plaintiff leave to issue a subpoena to Comcast, located in Moorestown, NJ. Plaintiff issued the subpoena to Comcast out of the District Court of New Jersey because courts in the Eleventh Circuit have held that the proper district to issue a subpoena is the district where the documents are located. See Morris v. Sequa Corp., 275 F.R.D. 562 (N.D. Ala. 2011) (holding that subpoenas issued to T-Mobile Wireless in the District Court of New Jersey and to Sprint in the United States District Court, District of Kansas were issued by the proper courts even though the claim was brought in the Northern District of Alabama). See also Managed Care Solutions, Inc. v. Essent Healthcare, Inc., 09-60351-CIV, 2010 WL 3419420, at *2 (S.D. Fla. Aug. 27, 2010) ("[t]ypically, a subpoena for production of documents must issue from the district where the documents are located"). Therefore, it would have been improper for the Southern District of Florida, where Plaintiff's Florida counsel is located, to enforce the subpoena.

After being served by Plaintiff, Comcast began compliance with the subpoena by notifying Defendants of its intent to disclose their identifying information to Plaintiff. Comcast has not appeared nor raised any objections to the subpoena.

Defendant's Florida counsel notified Plaintiff on May 17, 2012 that it planned to move to quash the subpoena on the basis that the subpoena was issued from the wrong court, citing <u>Hay Group, Inc. v. E.B.S. Acquisition Corp.</u>, 360 F.3d 404, 412 (3d Cir. 2004). Plaintiff explained to Defendant's counsel that it would reissue the subpoena from the proper court if it could establish the correct court to issue the subpoena. Plaintiff further explained that it did not believe it would be proper to issue the subpoena out of the Southern District of Florida. Indeed, if Plaintiff had withdrawn its subpoena and reissued it out of the Southern District of Florida, where the documents are to be produced, Defendant could have filed a similar Motion, also seeking attorney's fees.

Seeing a conflict of laws between jurisdictions and without a clear direction of appropriate action, Plaintiff filed a Motion for Direction with the Court in the Middle District of Florida seeking advice on the proper court to issue the subpoena.(Exhibit A). The Middle District of Florida has set a hearing on Plaintiff's Motion for June 14, 2012. Fed.R.Civ.P. 45(a)(3) permits the issuance of subpoenas in Federal court cases to individuals and entities across the nation. Consequently, Plaintiff's absolute right to serve a subpoena on Comcast is beyond doubt.

## II.     <u>ATTORNEY'S FEES ARE NOT WARRENTED</u>

This Court should not issue attorney's fees to Defendant. "The Court notes that attorney fees are generally awarded only in the most egregious of circumstances, such as when a party has clearly breached Rule 45." <u>SAJ Distributors, Inc. v. Sandoz, Inc.</u>, CIV.A.08-1866(JAP), 2008 WL 2668953 (D.N.J. June 27, 2008). As stated above, Plaintiff had a court order based on good

5

cause to issue this subpoena. Defendant is not the subject of the subpoena and has not been required to produce any documents. "[A]lthough Defendant may have been inconvenienced by Plaintiff's request, that alone is not enough to meet the undue burden standard pursuant to Rule 45, particularly given the outcome, where Defendant has not even been required to produce any documents that are the subject here." Id. In this case, while Defendant has filed a Motion to Quash, Defendant has failed to establish any prejudice based on Plaintiff issuing the subpoena out of this Court. Indeed, if the Southern District of Florida were to allow Plaintiff to reissue the subpoena from its court, the end result would be exactly the same. Defendant has filed this Motion to Quash simply to limit Plaintiff's ability to receive the information, so that Plaintiff may not continue its valid copyright infringement claim against Defendant and properly resolve the case on the merits.

Plaintiff has an absolute right to issue this subpoena under Rule 45 and Plaintiff's decision to issue the subpoena from the District Court of New Jersey was entirely reasonable. Fed. R. Civ. P. 45(2) provides, "A subpoena must issue as follows: … (C) for production or inspection, if separate from a subpoena commanding a person's attendance, from the court for the district where the production or inspection is to be made." In the Southern District of Florida, where the documents requested from Comcast are to be sent, courts hold "[t]ypically, a subpoena for production of documents must issue from the district where the documents are located". Managed Care Solutions, Inc. v. Essent Healthcare, Inc., 09-60351-CIV, 2010 WL 3419420, at *2 (S.D. Fla. Aug. 27, 2010).

Further, courts in the Third Circuit have held that a subpoena to produce documents should be issued from the district where the documents are located. "The appropriate focus in this case, then, is not address of production written on the subpoena, but the location of the documents requested, and whether or not they are in the control of a respondent within the

6

district of the issuing court." City of St. Petersburg v. Total Containment, Inc., MISC. 07-191, 2008 WL 1995298 (E.D. Pa. May 5, 2008). "Typically, a subpoena for production of documents must issue from the district where the documents are located." Hallamore Corp. v. Capco Steel Corp., 259 F.R.D. 76, 79 (D. Del. 2009). "However, when a subpoena demands the production of documents in addition to attendance at a deposition, the subpoena may issue from the court of the district where the deposition is to take place." Id.

Defendant relies on Hay Group, Inc. v. E.B.S. Acquisition Corp., 360 F.3d 404 (3d Cir. 2004) for its assertion that the subpoena was issued out of the wrong court, but Hay Group is different from this case in that the subpoena in question required both the production of documents and attendance at a deposition. Id. at 407. In light of this discrepancy, to issue Defendant attorney's fees would be grossly unjust when Plaintiff has a reasonable and good faith belief that it was issuing the subpoena from the correct Court.

## III.    DEFENDANT DOES NOT HAVE STANDING TO QUASH THE SUBPOENA

Defendant does not have standing to move to quash the subpoena based on a procedural technicality because the subpoena is directed at Comcast and not Defendant. Defendant is not being required to produce anything. In a near identical case, the District Court of the District of Columbia held that only the Internet Service Providers can move to quash defects in the form of the subpoena. "Other objections raised by movants, such as those based on alleged defects in the form of the subpoenas or improper service, may only be raised by the ISPs themselves in an appropriate motion to quash or for protective order." W. Coast Productions, Inc. v. Does 1-5829, 275 F.R.D. 9, 16 (D.D.C. 2011).

Defendant claims standing based on an alleged privacy interest but this Court has held that defendant does not have a privacy interest in an IP Address when that IP address is being

used to commit copyright infringement. See Patrick Collins, Inc. v. Does 1-43, 11-CV-4203-FSH (D. NJ. Jan. 6, 2012).

> Plaintiff has a strong interest in protecting its copyrights and copyright infringers do not have a privacy interest in the subscriber information they provide to ISPs. *See Call of the Wild Movie, LLC v. Does 1-1062 et al.*, 770 F.Supp.2d 332, 348 (D.D.C. 2011).

Id. The Eastern District of Pennsylvania reached the same conclusion noting that the privacy interest is minimal because individuals that engage in file sharing have essentially volunteers their information by engaging in that behavior. See Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067 at *8 (E.D. Pa. Mar. 26, 2012).

> [C]ourts analyzing the expectation of privacy possessed by internet users engaging in online file-sharing have concluded that such expectation is at most minimal because those individuals have already voluntarily given up certain information by engaging in that behavior. A Doe defendant who has allegedly used the internet to unlawfully download and disseminate copyrighted material does not have a significant expectation of privacy. *Accord In re Verizon Internet Servs., Inc.*, 257 F.Supp.2d 244, 267 (D.D.C.2003) (engaging in peer-to-peer file-sharing is akin to "essentially opening up the computer to the world").

Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012). For these reasons Defendant does not have a privacy interest and does not have standing to quash a subpoena to which it is not a party on the basis of a procedural deficiency.

### IV.    PLAINTIFF HAS A PROPER PURPOSE

The online theft of Plaintiff's property greatly damages its business, products, and reputation. Accordingly, Plaintiff Malibu Media's motivation for bringing these suits is quite simply to hold the infringers liable for their theft and by so doing hopefully deter the future theft of its movies. If there was any easier way to stop the infringement, Malibu Media would immediately pursue it.

Both the Eighth and Second Circuits, the only circuits to rule on this issue, have approved the use of Rule 45 subpoenas in on-line infringement cases to identify anonymous Doe Defendants. The Eight Circuit held "organizations such as the RIAA can file a John Doe suit,

8

along with a motion for third-party discovery of the identity of the otherwise anonymous 'John Doe' defendant." In re Charter Communications, Inc., Subpoena Enforcement Matter, 393 F.3d 771, FN3 (8th Cir. 2005). Similarly, in Arista Records, LLC.v. Doe 3, 604 F.3d 110 (2d Cir. 2010) the Second Circuit upheld the District Court's denial of a motion to quash after Arista obtained leave "to serve a subpoena on defendants' common ISP, the State University of New York at Albany." By so holding, the Second Circuit approved the process of issuing a Rule 45 subpoena to an ISP to identify anonymous Doe Defendants. Doe 3 in the Arista case unsuccessfully argued he or she had a First Amendment right to remain anonymous which outweighed a Plaintiff's right under the Petition Clause of the U.S. Constitution to sue for copyright infringement. Additionally, the Second Circuit rejected Doe 3's assertion that the Supreme Court's heighted pleading standards as announced in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1337 (2009) made it impossible to plead a claim of infringement against an on-line anonymous infringer.

At this stage of the litigation process, Plaintiff has no other option but to file suit against the owners of these IP addresses to obtain the infringers identity. If this Court were to follow Defendant's rationale, Plaintiff would have no recourse against the mass copyright infringement it suffers on a daily basis. Any such holding would be contrary to existing law and the express policy of Congress. In 1999 Congress intentionally amended the Copyright Act to deter individuals from infringing copyrights on the internet by increasing the statutory remedies:

> Congress did contemplate that suits like this [against individuals] were within the Act. Congress last amended the Copyright Act in 1999 <u>to increase the minimum and maximum awards</u> available under § 504(c). See Digital Theft Deterrence and Copyright Damages Improvement Act of 1999, Pub. L. No. 106-160, 113 Stat. 1774. At the time, Congress specifically acknowledged that <u>consumer-based, noncommercial use of copyrighted materials constituted actionable copyright infringement.</u> Congress found that "copyright piracy of intellectual property flourishes, assisted in large part by today's world of advanced technologies," and cautioned that "the potential for this problem to

9

worsen is great."

Sony v. Tennenbaum, 2011 WL 4133920 at *11 (1st Cir. 2011) (emphasis added).

During her time as Register of Copyright, Mary Beth Peters explained the rights of copyright holders in peer-to-peer infringement actions to the Senate Judiciary Committee. "The law is unambiguous. Using peer-to-peer networks to copy or distribute copyrighted works without permission is infringement and copyright owners have every right to invoke the power of the courts to combat such activity. Every court that has addressed the issue has agreed that this activity is infringement." [1]Ms. Peters further explained the significant need for exactly the type of copyright infringement claims that are before this Court:

> [F]or some users of peer-to-peer technology, even knowledge that what they are doing is illegal will not be a sufficient disincentive to engage in such conduct. But whether or not these infringers know or care that it is against the law, the knowledge that such conduct may lead to expensive and burdensome litigation and a potentially large judgment should have a healthy deterrent effect. While we would like to think that everyone obeys the law simply because it is the law and out of a sense of obligation, we also know that laws without penalties may be widely ignored. <u>For many people, the best form of education about copyright in the internet world is the threat of litigation. In short, if you break the law, you should be prepared to accept the consequences.</u> Copyright owners have every right to enforce their rights in court, whether they are taking action against providers of peer-to-peer services designed to profit from copyright infringement or <u>against the persons engaging in individual acts of infringement using such services.</u>

Id. (Emphasis added).

## V.     PLAINTIFF HAD GOOD CAUSE TO ISSUE THE SUBPOENA

This Court haspreviously held in a near identical copyright BitTorrent infringement action that a plaintiff had established good cause to issue a subpoena because the need to obtain the information from defendant's ISP is necessary for plaintiff to further its copyright

---

[1] <u>Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary</u> 108th Cong. (2003) <u>available at</u>http://www.copyright.gov/docs/regstat090903.html

10

infringement claim. See Patrick Collins, Inc. v. Does 1-43, 11-CV-4203-FSH (D. NJ. Jan. 6, 2012) (Exhibit B)

> Only the ISPs can identify the Defendants once the ISPs have been provided with the IP addresses along with the date and time of the infringing activity. Plaintiff has also sufficiently alleged a central need for the subpoenaed information to advance the claim as it seems there is no other way for Plaintiff to obtain the information it seeks in order to go forward with its copyright infringement claim.

Id. at *4.

The Middle District of Florida also based its decision to grant Plaintiff leave to issue this subpoena because Plaintiff has established good cause. See Malibu Media v. John Does 1-9, 8:12-cv00669-SDM-AEP (M.D. Fla. April 16, 2012) (Exhibit C). Indeed, in reasoning similar to this Court's past decisions, the Middle District of Florida granted Plaintiff good cause on the basis that Plaintiff had clearly identified the information sought through discovery, and Plaintiff has no other way to obtain the Defendant's true identity. Further, the information Plaintiff seeks is time sensitive and Plaintiff runs the risk of not being able to pursue its claims in this action if the subpoena is denied.

> Plaintiff has clearly identified the information sought through discovery by identifying the IP addresses of the Doe Defendants as well as the "hit date," city, state, ISP, and network for each IP address and shown that it has no other way to obtain the Doe Defendants' true identities. Moreover, the information Plaintiff seeks is time sensitive as ISPs do not retain user activity logs for an extended duration. See Fieser Declaration at 2; see also Arista Records, 3:08-CV-18(CDL), 2008 WL 542709 *1. Accordingly, if Plaintiff does not timely obtain the Doe Defendants' identifying information, Plaintiff may lose its ability to pursue its claims in this action. As such, Plaintiff has established good cause for proceeding with expedited discovery prior to the Rule 26(f) conference.

Id.

## VI. THE INFORMATION PLAINTIFF REQUESTS IS RELEVANT

The Middle District of Florida granted Plaintiff limited discovery to serve a subpoena on Defendant's ISP because Plaintiff has no other way to identify the Defendants and proceed with

its copyright infringement case against them. Plaintiff has requested only the identifying information of the Defendants from their ISPs. As other courts in the Third Circuit have explained, the information Plaintiff seeks is highly relevant.

> The Court found good cause for ordering that discovery, *see* Fed.R.Civ.P. 26(b)(1), because the plaintiff showed that a subpoena seeking the subscriber information associated with the allegedly infringing IP addresses would be the only way for the plaintiff to identify the proper defendants in this case and proceed with its claims against them.[3] *See* Declaration of Tobias Fieser ¶ 9, 23, Pl.'s Mot. Ex. <u>The information sought is thus highly relevant to the plaintiff's claims.</u>

Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067, at *6 (E.D. Pa. Mar. 26, 2012).

The Eastern District of Pennsylvania court also noted that Fed. R. Civ. P. 26(b)(1) permits parties to obtain discovery of "the identity and location of persons who know of any discoverable matter." Id. at *14. When addressing the issue of whether the infringer is the account holder of the IP address, the Court stated "[t]hese are not grounds on which to quash a subpoena otherwise demonstrated to be proper. The moving Doe may raise these and any other nonfrivolous defenses in the course of litigating the case." Id.

Defendant relies on an unpublished opinion from the Northern District of Illinois to support his theory that Plaintiff's subpoena should be quashed. See Def's Mot. citing VPR Internationale v. Does 1-1017, 2:11-cv-02068, (C. Ill. March 8, 2011). VPR Internationale involved 1,017 defendants grouped into one case, and lacked personal jurisdiction and venue. This case does not suffer from the same procedural problems.

Defendant also relies heavily on the Eastern District of New York opinion where Judge Brown questioned the likelihood the infringer was the owner of the IP Address. See Def's Mot. at ¶ 6. Plaintiff respectfully disagrees with Magistrate Judge Brown's opinion and believes that recent technological advances make it more likely that a wireless account will be secured and

12

can easily be traced to a household where the subscriber either is the infringer or knows the infringer. Recently, PC Magazine published an article regarding the scarcity of open wireless signals. "These days, you are lucky to find one in 100 Wi-Fi connections that are not protected by passwords of some sort."[2] The author continues to explain why routers are now more likely to be secured. "The reason for the change is simple: the router manufacturers decided to make users employ security with the set-up software. As people upgrade to newer, faster routers, the wide-open WiFi golden era came to an end."[3] This article, published on March 26, 2012, runs contrary to Judge Brown's assertions and supports the idea that most households do have closed, protected wireless that are not likely to be used by a neighbor or interloper.

Further, Plaintiff uses the same process as Federal Law Enforcement to identify cyber crimes. In a Statement of Deputy Assistant Attorney General Jason Weinstein before the Senate Judiciary on Privacy, Technology and the Law, he discusses how Federal law enforcement use IP addresses to identify an individual.

> When a criminal uses a computer to commit crimes, law enforcement may be able, through lawful legal process, to identify the computer or subscriber account based on its IP address. This information is essential to identifying offenders, locating fugitives, thwarting cyber intrusions, protecting children from sexual exploitation and neutralizing terrorist threats.[4]

The Eastern District of Pennsylvania court directly addressed whether an IP address was sufficient to identify the infringer.

> The Court acknowledges that Verizon's compliance with the subpoena may not directly reveal the identity of an infringer. Indeed, the subscriber information Verizon discloses will only reveal the account holder's information, and it may be that a third party used that subscriber's IP address to commit the infringement alleged in this case.

---

[2] See Free Wi-Fi is Gone Forever www.pcmag.com/article2/0,2817,2402137,00.asp (Attached as Exhibit D).
[3] Id.
[4] Statement of Deputy Assistant Attorney General Jason Weinstein Before the Senate Judiciary Subcommittee on Privacy, Technology and the Law available at www.justice.gov.

13

Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012). (Internal citations omitted). The Court went on to note that while the IP address did not guarantee the subscriber was the infringer, "[t]he subpoena is specific enough to give rise to a reasonable likelihood that information facilitating service upon proper defendants will be disclosed if the ISPs comply." Id.

### A. The Doe Defendant's IP Addresses Were Undoubtedly Used to Distribute Plaintiff's Copyrighted Movie

Defendant references a study that concludes the best approach to accurately identify IP addresses is to establish a direct connection with the infringing user and verify the contents received:

> A more thorough approach to detecting infringement in BitTorrent would be to adopt the stated industry practice for monitoring the Gnutella network: <u>in the case of suspected infringement, download data directly from the suspected user and verify its contents.</u> Because we have notified several enforcement agencies ... we expect increasing use of direct downloads for verifying information.[5]

(Emphasis added.) Plaintiff used this <u>exact</u> process to identify Defendant's IP address. Plaintiff's investigative service, IPP Limited, established a direct one to one connection with a computer using Defendant's internet service and received a piece of Plaintiff's copyrighted movie from that computer. "A direct and continuous connection between the IPTRACKER-server and the uploader of the file is established and exists at least 10 seconds before, during and at least 10 seconds after the capture sequence i.e. during the whole download process." (Dec. Tobias Feiser Ex. A. at *4.)(Exhibit E).

---

[5] Def.'s Mot. 6 citing Michael Piatek, Tadayoshi Kohno, & Arvind Krishnamurthy, *Challenges and Directions for Monitoring P2P File Sharing Networks – or – Why My Printer Received a DMCA Takedown Notice*, 3rd USENIX Workshop on Hot Topics in Security (HatSec '08), July 2008.

14

Further, as Defendant's study suggests, Plaintiff has taken additional safeguards for accuracy by verifying the content received from Defendant.[6] Plaintiff has a human "in the loop" to provide a manual check of the identifying material. As Plaintiff's investigator, Tobias Fieser, attests, "I analysed each BitTorrent 'piece' distributed by each IP address listed on Exhibit B and verified that reassembling the pieces using a specialized BitTorrent Client results in a fully playable digital motion picture." (Dec. Tobias Fieser at ¶ 21.) Plaintiff is absolutely certain that Defendant's IP address downloaded, controlled, and distributed Plaintiff's copyrighted work to its investigative service. Defendant's study supports Plaintiff's findings.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the subject motion.

Dated: June 4, 2012

Respectfully submitted,

By: /s/ Patrick J. Cerillo
Patrick J. Cerillo, Esquire

### CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2012, a true and correct copy of the foregoing was filed with the Clerk of the Court via hand-delivery (courier service) and served upon Defendant via electronic mail.

By: /s/ Patrick J. Cerillo
Patrick J. Cerillo, LLC

---

[6] Piatek at *6.

15